NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

———————————————————————
GERARD J. MARULLI & GREGORY J. MAZZA,      )
                                            )
                           Plaintiffs,      )   Civil Action No.: 04-2869 (JLL)
                                            )                 04-2874
v.                                          )
                                            )        **O P I N I O N**
JASON ALLOY, et al.,                        )
                                            )
                           Defendants.      )
———————————————————————      )

**LINARES**, District Judge.

This matter comes before the Court on the motion for summary judgment filed by

Defendants Jason Alloy ("Alloy") and Harry M. Stevens, Inc.[1] ("HMS") and the motion for

summary judgment by Defendant the New Jersey Sports and Exposition Authority (the

"NJSEA"). No oral argument was heard. Fed. R. Civ. P. 78. For the reasons set forth in this

Opinion, Defendants' motions for summary judgment are granted.

## BACKGROUND

**A.      Factual Background**

On March 20, 2004, Plaintiffs Gerald J. Marulli ("Marulli") and Gregory J. Mazza

———————————————

[1]The Court notes that Plaintiff improperly HMS as "Aramark." However, it has been
stipulated in the Final Pretrial Order that Aramark was *not* the employer of Alloy, rather HMS
was. Plaintiffs failed to amend their complaints accordingly and curiously, continue to refer to
"Aramark" in their briefs in place of HMS. However, in accordance with the Final Pretrial Order,
the Court will refer only to HMS, the correct party, and will make no further reference to
"Aramark."

1

("Mazza") (collectively "Plaintiffs"), were patrons at the Meadowlands Racetrack (the "Meadowlands"), which is located in New Jersey.  The Meadowlands is owned and operated by the NJSEA, a public entity of the State of New Jersey.  On March 20, 2004, Defendant Alloy was employed by HMS as a waiter at the Meadowlands.

Plaintiffs' and Alloy's accounts of the facts surrounding the incident that ultimately give rise to Plaintiffs' claims vary significantly.  However, as explained infra, the Court determines that resolution of these factual disputes is not critical to consideration of Plaintiffs' claims.

According to Alloy, at or about 8:00 p.m on the evening of March 20, 2004, Alloy and Marulli bumped into one another while passing each other on the landing of a stairwell outside of a restaurant in the Meadowlands where Plaintiffs were dining.  By contrast, Marulli claims that Alloy bumped into him.  Alloy testified that he excused himself and continued walking up the stairs, while Marulli testified that Alloy made "hard contact" with him and kept walking.  Marulli testified that he said to Alloy "don't you want to apologize", to which Alloy said "go fuck yourself" and kept walking. (Marulli Dep. 16:24, July 7, 2005). Marulli testified that he believed Alloy intended to hurt him, and that Marulli became angry.  (Id.).

After the incident on the stairwell, Marulli sought his friend and companion that evening, Mazza, who was in the restaurant and did not witness the exchange between Alloy and Marulli. Marulli recounted his encounter with Alloy to Mazza, and the two left the restaurant and followed Alloy into a restroom in an attempt to "have a conversation with him."  (Marulli Dep. 16-17, July 7, 2005). Marulli and Mazza testified that they chose to follow and confront Alloy instead of reporting his behavior to his supervisors because Marulli did not want Alloy to lose his job.  Marulli stated that his goal was to "have a private conversation with [Alloy] without

2

creating a scene." (Id. at 18).

Some type of exchange occurred in the restroom, though again, the parties' accounts of the events differ drastically.  Alloy contends that Marulli threatened to "stomp him" if he did not apologize and that Mazza then grabbed him by the waist and shoulder as Alloy attempted to exit the restroom. (Alloy Dep. 19:17, November 29, 2005). By contrast, Mazza testified that he alone spoke with Alloy, asking him first whether he had almost knocked his friend over, and when Alloy replied that he did not, Mazza asked if Alloy was calling Marulli a liar.  (Mazza Dep. 8:21, July 7, 2005). Mazza also testified that though he remembered putting up his hand to signal Alloy to wait when Alloy tried to leave the restroom, Mazza did not recall whether there was any contact between himself and Alloy.  (Id. at 9). Mazza further testified that there was no contact between Marulli and Alloy.  (Id.). Marulli testified that when Alloy tried to leave, Mazza "reached out", and Alloy "struck out" at Mazza's hand before leaving the restroom. (Marulli Dep. 21:13, July 7, 2005. Marulli testified that he does not know whether there was any contact between Alloy and Mazza, saying "there may have been incidental contact or they might have missed.  I don't know, it was close." (Id. at 21).

Alloy fled the restroom and called for assistance from the nearest security guard.  As Plaintiffs were leaving the restroom, a NJSEA security guard told them that he needed to escort them to the security office.  The security guard further explained that Alloy was filing a criminal complaint against Plaintiffs.  Plaintiffs were taken downstairs to the security office to wait while Alloy filed a complaint with the State Police.  Alloy filed a criminal complaint against Marulli for "improper behavior", specifically for Marulli's alleged threat to "stomp him." (Alloy Dep. 24 - 26:24, November 29, 2005). Alloy also filed a criminal complaint against Mazza for simple

assault based upon Alloy's allegation that Mazza grabbed him in the restroom.

Marulli testified that Plaintiffs were detained in the security office for about an hour and at the State Police holding pen for another hour.  (Marulli Dep. 37:17-25, July 7, 2005). According to Marulli, while at the security office, Plaintiffs attempted to file a complaint against Alloy with NJSEA Security, but they refused to accept the complaint.  In an attempt to convince the security guards to process Plaintiffs' complaints and to disregard Alloy's complaints, Marulli requested that Plaintiffs take a polygraph test to prove the veracity of their account and to discredit Alloy's account.  NJSEA Security denied Plaintiffs' request.  After NJSEA Security processed the Plaintiffs and Alloy filed the criminal complaint with the State Police, Plaintiffs were ejected from the Meadowlands. Plaintiffs were prohibited from returning to the Meadowlands until their ejection was reconsidered and rescinded nearly two months later on May 17, 2004, at Plaintiffs' request.

On March 31, 2004, Marulli filed "several complaints" against Alloy in Municipal Court. On May 12, 2004, Alloy dropped his criminal complaints against Plaintiffs, and Marulli likewise withdrew his criminal complaints filed against Alloy pursuant to the advice of counsel. Plaintiffs' records were ultimately expunged.

**B.     Procedural Background**

On June 18, 2004 Marulli filed a Complaint in this Court alleging violation of his constitutional rights as well as several state law causes of action. By way of Amended Complaint filed on March 2, 2005 (the "Marulli Amended Complaint"), Marulli named Alloy, the NJSEA,

and HMS as Defendants[2]. (Marulli Am. Compl. ¶¶ 4-6). The Marulli Amended Complaint sets forth claims for failure to properly train and supervise, failure to intervene, and false imprisonment in violation of his Constitutional rights. The Marulli Amended Complaint also alleges state common law claims of conspiracy, assault and battery, and defamation.

On June 18, 2004, Mazza filed a Complaint in this Court alleging violation of his constitutional rights as well as several state law causes of action. By way of Amended Complaint filed March 2, 2005 (the "Mazza Amended Complaint"), Mazza named Alloy, the NJSEA and HMS as Defendants[3]. The Mazza Amended Complaint sets forth two claims pursuant to 42 U.S.C. § 1983 and various state law claims.[4]

On February 28, 2006, Judge Ronald J. Hedges issued an order which consolidated Plaintiffs' cases. Plaintiffs seek compensatory and punitive damages, as well as costs and attorneys fees, and such other relief as this Court finds just and proper.

Presently, Defendants move for summary judgment on all of Plaintiffs' federal and state law claims.

## LEGAL STANDARD

To prevail on a motion for summary judgment, the moving party must establish that

---

[2]Although the caption of Marulli's Amended Complaint also named John Does 1-5 and ABC Corporations 1-5 as Defendants, such parties were not referenced further within the Amended Complaint.

[3]Although the caption of Marulli's Amended Complaint also named John Does 1-5 and ABC Corporations 1-5 as Defendants, such parties were not referenced further within the Amended Complaint.

[4]The claims set forth in the Mazza Amended Complaint mirror those contained in the Marulli Amended Complaint except that Mazza did not set forth a claim for assault and battery.

"there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); Gleason v. Norwest Mortgage, Inc., 243 F.3d 130, 138 (3d Cir. 2001). "A 'genuine' issue is one where a reasonable jury, based on the evidence presented, could hold in the movant's favor with regard to that issue." Schoonejongen v. Curtiss-Wright Corp., 143 F.3d 120, 129 (3d Cir. 1998) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986)). When considering a motion for summary judgment, all evidence must be reviewed and all inferences drawn therefrom must be in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

Once the moving party files a properly supported motion, the burden shifts to the nonmoving party to demonstrate the existence of a genuine dispute of material fact. Fed. R. Civ. P. 56(e); Anderson, 477 U.S. at 256. "The mere existence of a scintilla of evidence in support of the [nonmovant]'s position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmovant]." Id. at 252. Furthermore, conclusory statements and arguments do not raise triable issues which preclude summary judgment. Ridgewood Board of Educ. v. N.E., 172 F.3d 238, 252 (3d Cir. 1999). Instead, the nonmoving party must "present affirmative evidence in order to defeat a properly supported motion for summary judgment." Anderson, 477 U.S. at 257 (citation omitted). If the opponent fails to make a sufficient showing regarding an essential element of his or her case upon which he or she will bear the burden of proof at trial, all other facts are necessarily immaterial and summary judgment must be granted. Celotex Corp. v. Catrett, 477 U.S. 317, 321 (1986).

**DISCUSSION**

**A.      Plaintiffs' § 1983 Claims**

Plaintiffs set forth two clear claims under 42 U.S.C. § 1983: "failure to properly train and

supervise" and "failure to intervene."[5] Plaintiffs' failure to train claim is alleged against the

NJSEA, HMS, and John Does 2-5 and Plaintiffs' failure to intervene claim names only John

Does 1-5 with merely a general reference to "Defendants."

Section 1983 provides, in relevant part:

> Every person who, under color of any statute, ordinance,
> regulation, custom, or usage, of any State or Territory or
> the District of Columbia, subjects, or causes to be subjected,
> any citizen of the United States or other person within the
> jurisdiction thereof to the deprivation of any rights, privileges
> or immunities secured by the Constitution and laws, shall
> be liable to the party injured in an action at law, suit in
> equity, or other proper proceeding for redress.

42 U.S.C. § 1983.  Section 1983 does not create substantive rights; but rather "it provides

remedies for deprivations of rights established elsewhere in the Constitution or federal laws."

Kneipp v. Tedder, 95 F.3d 1199, 1204 (3d Cir. 1996).  A § 1983 claim has two essential

components: 1) that the conduct complained of was committed by a person acting under the color

of state law, and 2) that the conduct deprived a person of rights, privileges, or immunities secured

---

[5]The reason why the Court uses the phrase "clear claims under 42 U.S.C. § 1983" is because neither the Marulli Amended Complaint nor the Mazza Amended Complaint appear to allege any underlying claim for violation of their Constitutional rights. Rather, based on the facts alleged in the complaints and portions of various counts in the complaints, the Court, and Defendants, are left to piece together what claims the Plaintiff truly intended to assert and against whom. However, at various points in Counts One and Two, Plaintiffs refer to their "unlawful arrest" (Marulli Am. Compl.¶¶ 19, 21; Mazza Am. Compl. ¶¶ 19, 21) and Alloy's duty to refrain "from striking patrons." (Marulli Am. Compl. ¶ 10; Mazza Am. Compl. ¶ 10). Plaintiffs leave the Court to piece together what claims are set forth in the Complaint. However, since Plaintiffs' use of language such as "failure to train and supervise" and "failure to intervene" sound in § 1983 jurisprudence, the Court will construe them within this statutory framework.

by the Constitution or laws of the United States.  Piecknick v. Pennsylvania, 36 F.3d 1250, 1255-56 (3d Cir. 1994).

### 1.     Defendants HMS and Alloy

Defendants HMS and Alloy[6] move for summary judgment on Plaintiffs' § 1983 claims on the basis that Plaintiffs are unable to state a claim under § 1983. These Defendants contend that they did not act under color of state law when Plaintiffs' Constitutional rights were allegedly violated since neither Alloy nor HMS are, or were, state actors. Notably, Plaintiffs' Statement of Material Facts in Opposition does not address whether these Defendants were acting under color of state law.  Rather in opposition, Plaintiffs contend that as "independent contractors" of the NJSEA, HMS "should be held to the same standard as the New Jersey Sport & Expedition [sic] Authority in violations of Civil Rights." (Pl. Br. Opp'n to Alloy/HMS at Point Two[7]). For this proposition, Plaintiffs cite the Supreme Court case Baker v. McCollan, 443 U.S. 137 (1979). However, as noted by Alloy and HMS, this case does not concern state actor-status of an independent contractor of a state or state entity and is thus of no import to the Court.

Independent contractors can be liable for § 1983 violations if they are acting in a joint function with the State. However, contrary to Plaintiffs' Complaints, Alloy was employed by HMS at the time of the incident, not the NJSEA. Unlike the NJSEA, HMS is not a public entity of the State of New Jersey, and its employees would not generally be considered state actors.  See Barna, 42 F.3d at 816.  Accordingly, to determine whether a § 1983 action against HMS and its

---

[6]Although Alloy is not specifically named in either Amended Complaint as liable for Plaintiffs' §1983 claims, assuming arguendo he was, Alloy alleges that he cannot be liable since he was not acting under color of state law.

[7]Plaintiffs' brief does not contain page numbers.

employee, Alloy, may lie, the Court must first reach the threshold issue of whether HMS and its employees can properly be characterized as state actors for the purpose of Plaintiffs' § 1983 claims.

The inquiry for determining whether a state action is present is less than formulaic. Benn v. Universal Health Sys., 371 F.3d 165, 171 (3d Cir. 2004) (citing Brentwood Acad. V. Tennessee Secondary Sch. Athletic Ass'n, 531 U.S. 288, 296 (2001)). However, the Supreme Court does outline factors to consider in identifying a state action. Id. Actions resulting from the State's exercise of coercive power constitute state actions. Id. (citing Blum v. Yaretsky, 457 U.S. 991, 1004 (1982)). Actions that are significantly encouraged by the State or those in which private actors are "willful participants in joint activity with the State or its agents" are also characterized as state actions. Id. (citing Lugar v. Edmondson Oil Co., 457 U.S. 922, 941 (1982)). Actions by employees of "private" entities controlled by an agency of the State are also state actions. Id. (citing Pennsylvania v. Board of Directors of City Trusts of Philadelphia, 353 U.S. 230, 231 (1957) (per curiam)). Private entities that are delegated State public functions are state actors. Id. (citing West v. Atkins, 487 U.S. 42, 56 (1988); Edmonson v. Leesville Concrete Co., 500 U.S. 614, 627-28 (1991)). Finally, when private entities are entwined with governmental policies or the government is "entwined in its management or control," private entities are considered to be state actors.  Id. (citing Evans v. Newton, 382 U.S. 296, 299 (1966)).

An analysis of the Supreme Court factors as applied to the instant matter dictates that HMS and its employees, including Alloy, cannot properly be characterized as state actors for the purposes of Plaintiffs' § 1983 claims. HMS, a food service provider for the NJSEA, is not controlled by the NJSEA or any agency of the State. Further, HMS is not delegated any public

functions of the State. Finally, though HMS is a service provider for the NJSEA, Plaintiffs put forth no evidence showing that the NJSEA or any other public entity is "entwined in its management or control." Benn, 371 F.3d at 171 (citing Evans, 382 U.S. at 299). As an employee of HMS, the same analysis necessarily applies with equal force to Alloy. There is no evidence in the record to demonstrate that HMS and Alloy were "willful participants in joint activity" with the State during the alleged assault of Plaintiffs by Alloy and the ensuing detainment. Benn, 371 F.3d at 171 (citing Lugar, 457 U.S. at 941). Even viewing the facts in a light most favorable to Plaintiffs, the nonmoving parties, the Court determines that HMS and Alloy were decidedly not acting under color of state law during the alleged course of events giving rise to Plaintiffs' § 1983 claims. Accordingly, Counts One and Two of the Mazza Amended Complaint and Marulli Amended Complaint are dismissed with prejudice as alleged against HMS and Alloy.

     **2.     The NJSEA**

     The NJSEA is a public entity of the State of New Jersey.  As such, employees of the NJSEA, when acting in their official capacities, are generally considered to be acting under "color of state law." Barna v. City of Perth Amboy, 42 F.3d 809, 816 (3d Cir. 1994) (citing West v. Atkins, 487 U.S. 42, 49 (1988); Flagg Bros. v. Brooks, 436 U.S. 149, 157 n.5 (1978)); see Hadges v. Yonkers Racing Corp., 48 F.3d 1320, 1322 (2d Cir. 1995) (noting that actions attributable to the NJSEA are state actions, as the NJSEA is a state agency).  In its submissions to the Court, the NJSEA does not contest that it is a state actor, and it appears that the same is well-settled. See Marilyn Manson, Inc. v. New Jersey Sports & Exposition Authority, 971 F.Supp. 875, 884 n.7 (D.N.J.,1997) (noting that the NJSEA is a state actor for purposes of 42 U.S.C. § 1983). Thus, the first component of a § 1983 claim is satisfied.

The second component requires Plaintiffs to demonstrate that the conduct alleged in the Complaint and established in the record deprived them of rights, privileges, or immunities secured by the Constitution or laws of the United States. Piecknick, 36 F.3d at 1255-56.

Count One of both the Marulli and Mazza Amended Complaints alleges that the NJSEA, along with Defendants HMS and John Does 2-5, "failed to properly train and supervise defendant Jason Alloy in regard to the following: (a) duties and obligations and refraining from striking patrons; (b) the duties and obligations in proper behavior of patrons; (c) their [sic] duties and obligations in the allegations in seeking arrest of patrons; (d) the appropriate procedures to be undertaken in the event they felt the patron was unruly; (e) their duties and obligations as it pertains to using personnel to arrest patrons; (f) alternative procedures in conducting an investigation were an allegation of its employees have [sic] been made against a patron; (g) other conduct and procedures relating to the arrest of the plaintiff." (Mazza Am. Compl ¶ 10; Marulli Am. Compl. ¶ 10). Plaintiffs allege that such failure to train and supervise Alloy violated Plaintiffs' federal Constitutional rights.

A failure to train and supervise claim "is employed by plaintiffs to hold municipalities liable for § 1983 violations of their employees." Lassoff v. State of New Jersey, 414 F.Supp. 2d 483, 492 (D.N.J. 2001). A public entity "may be held liable for the violation of a constitutional right under 42 U.S.C. § 1983 only when the alleged unconstitutional action executes or implements policy or a decision officially adopted or promulgated by those whose acts may fairly be said to represent official policy." Reitz v. County of Bucks, 125 F.3d 139, 144 (3d Cir. 1997) (quoting Monell v. New York City Dep't of Social Svcs., 436 U.S. 658, 690-91 (1978)). To sustain a claim for failure to train, that failure has to rise to the level of "deliberate indifference to

11

the rights of persons" with whom the employees come into contact. Id. at 145 (quoting City of Canton v. Harris, 489 U.S. 378, 388 (1989)). "Establishing municipal liability on a failure to train claim under § 1983 is difficult. A plaintiff pressing a § 1983 claim must identify a failure to provide specific training that has a causal nexus with their injuries and must demonstrate that the absence of that specific training can reasonably be said to reflect a deliberate indifference to whether the alleged constitutional deprivations occurred." Id. (citing Colburn v. Upper Darby Township, 946 F.2d 1017, 1030 (3d Cir. 1991)).

The NJSEA moves for summary judgment on Plaintiffs' failure to train claim on the basis that they are not vicariously liable for the actions of Alloy and that the NJSEA is protected from liability by the New Jersey Tort Claims Act, N.J.S.A. 59:9-1, et seq. ("NJTCA"). In opposition, Plaintiffs contend that the NJSEA is not immune from prosecution based upon the NJTCA. Plaintiffs also attempt to re-cast their failure to train claim as one based upon the NJSEA's failure to train employees of the NJSEA who detained the Plaintiffs. (Pl. Br. Opp'n to the NJSEA). However, the Court will not allow Plaintiffs to amend their complaints via summary judgment briefing to include various employees of the NJSEA within Count One. Plaintiffs are not pro se, and thus are not entitled to have this Court employ a liberal construction of the Complaints. From the Amended Complaints, it is clear to the Court that the allegations contained in Count One pertain only to NJSEA's alleged failure to train Alloy. Accordingly, the Court will consider the parties' arguments only as they pertain to liability of the NJSEA itself on Plaintiffs' failure to train and supervise claim.

After review of the parties' arguments and the record, the Court notes that Plaintiffs have failed to submit nor point to any evidence which sets forth information about the training

12

policies, procedures, or methods of supervision of the NJSEA, or any other information that would permit the Court to find in Plaintiffs' favor on this claim. In response to Defendant's Reply Brief, in which the NJSEA sets forth this argument, Plaintiffs argue that Marulli and Mazza themselves can, and will, offer testimony as to the policies, procedures and methods of the NJSEA. However, the Court notes that "[a] plaintiff pressing a § 1983 claim must identify a failure to provide specific training that has a causal nexus with their injuries and must demonstrate that the absence of that specific training can reasonably be said to reflect a deliberate indifference to whether the alleged constitutional deprivations occurred." Reitz, 125 F.3d at 145 (citation omitted).

Here, Plaintiffs set forth *no* evidence, let alone specific evidence, which tends to meet this standard. The Court is left to guess what the allegedly deficient policies of the NJSEA are, how such policies are deficient and how the policies ultimately caused the deprivation of Plaintiffs' Constitutional rights. Further, Marulli and Mazza have asserted no personal knowledge of such policies and offer no other witness able to testify to same. At summary judgment, if the opponent to the motion fails to make a sufficient showing regarding an essential element of his or her case upon which he or she will bear the burden of proof at trial, all other facts are necessarily immaterial and summary judgment must be granted. Celotex, 477 U.S. at 321. Accordingly, the NJSEA's motion for summary judgment as to Count One is granted and such claim is dismissed with prejudice.[8]

**3.     John Doe Defendants**

_____

[8]To the extent that Plaintiffs may allege that their failure to train claim is also alleged against John Does 1-5, see the Court's analysis infra.

In Count Two of Marulli's Amended Complaint and Count Two of Mazza's Amended Complaint, Plaintiffs allege that Defendant employees, John Does 1-5, who were present at the arrest had knowledge that Alloy's allegations against Plaintiffs were false. Plaintiffs ascribe to these Defendants a duty to intervene and stop Plaintiffs' detention. Plaintiffs allege that this failure to intervene was in violation of Plaintiffs' Constitutional rights, and Plaintiffs bring claims pursuant to 42 U.S.C. § 1983 for such violation. The language of Count Two is identical in both Mazza's and Marulli's Amended Complaints. Plaintiffs allege:

> Each of the defendant employees, John Doe 1-5 that were present at the scene during the unlawful arrest of the plaintiff at the request of the defendants and the defendants employees. The failure of those who were aware that the allegations were false and or misleading had a duty to the plaintiff to set forth same. Defendants violated 42 U.S.C. § 1983 by failing to intervene and stop the unlawful arrest of the plaintiff.

(Mazza Am. Compl. ¶¶ 19-21; Marulli Am. Compl. ¶¶ 19-21).

Upon a reading of the complaints, Plaintiffs appear to allege Count Two only against John Does 1-5. Despite the Complaints having been filed over two years ago, and Plaintiffs having filed Amended Complaints shortly thereafter, at no future point in the litigation did Plaintiffs ever seek leave to amend their Complaints to identify John Does 1-5. Accordingly, the Court dismisses Count Two with prejudice.

"[I]n the adversarial system of litigation the plaintiff is responsible for determining who is liable for [his] injury." Arthur v. Maersk, Inc., 434 F.3d 196, 212 (3d Cir. 2006) (citation omitted). "[If] the defendant's true name is unknown to the plaintiff, process may issue against the defendant under a fictitious name, stating it to be fictitious and adding an appropriate description sufficient to identify him. *Plaintiff shall on motion, prior to judgment, amend his*

*complaint to state defendant's true name*." Knight v. Brown Transport Corp., 806 F.2d 479, 487 (3d Cir. 1986) (emphasis added). "No final judgment shall be entered against a person designated by a fictitious name." Id. Accordingly, pursuant to Federal Rule of Civil Procedure 21, "parties may be dropped or added by order of the court on motion of any party or of its own initiative at any stage of the action and on such terms as are just." Fed. R. Civ. P. 21. Rule 21 has been used by the courts to dismiss claims against John Doe defendants, as appropriate. See Hightower v. Roman, Inc., 190 F. Supp. 2d 740, 754 (D.N.J. 2002).

Though Plaintiffs filed their Complaints over two years ago, on June 18, 2004, and Marulli amended his Complaint on March 2, 2005 to replace an unnamed defendant corporation, neither Plaintiff has yet identified the remaining unnamed Defendants in Counts One, Two, and Seven. Remarkably, the record shows no indication that Plaintiffs have made any attempt to identify the remaining unnamed Defendants or to amend their Complaints accordingly. As Plaintiffs have failed to name the John Doe Defendants, this Court may exercise its discretion and dismiss the claims against Defendants still unnamed at this point in the litigation. Krenzel v. SEPTA, 91 Fed. Appx. 199, 202 n4 (3d Cir. 2004) (unpublished decision) (citation omitted). The Court hereby dismisses Count Two of the Marulli and Mazza Amended Complaints with prejudice.[9]

---

[9]To the extent that Plaintiffs may argue that Count Two also includes a blanket reference to "Defendants," the Court notes that Plaintiffs have stated no basis for liability on this Count as to the NJSEA, Alloy, or HMS. With respect to the NJSEA, it is well-settled that § 1983 does not provide for respondeat superior liability and Plaintiffs have set forth no other applicable basis for liability relating to an alleged failure of the NJSEA to intervene. With respect to Alloy and HMS, from the undisputed facts in this matter, it is clear that neither Alloy nor HMS were involved with the alleged unlawful detention of Plaintiffs by the NJSEA security and thus there is no basis for their liability. Further, this Court has previously determined that HMS and Alloy were not acting under color of state law and thus cannot be liable pursuant to § 1983.

B.      **Conspiracy**

Count Three of the Marulli and Mazza Amended Complaints is titled "Conspiracy," however Plaintiffs include no reference to any federal or state conspiracy statute. Rather, Plaintiffs merely reference violation of their constitutional rights and apparently expect the Court to understand which statute upon which they rely. However, since this matter involves both state and private actors and Plaintiffs make general reference to their federal constitutional rights, this Court will construe Count Three as arising under both 42 U.S.C. § 1983 *and* 42 U.S.C. § 1985(3), alternatively.

In Count Three, Plaintiffs allege that Defendants Alloy, HMS, John Does 2-5 and the NJSEA conspired to violate Plaintiffs' constitutional rights and acted to avoid the discovery of such violations. (Marulli Am. Compl. ¶¶ 24-25; Mazza Am. Compl ¶¶ 24-25). It appears that Count Three refers to the Constitutional violations alleged in Counts One and Two, specifically the failure to train and supervise Alloy which allegedly resulted in Plaintiffs' unlawful arrest and Alloy's alleged assault as well as Plaintiffs' claim for Defendants' failure to intervene in the aforesaid allegedly unlawful arrest.

Although the elements of a conspiracy claim under § 1983 and § 1985(3) vary somewhat, each statute has at its core a basic, essential requirement.[10] Whether a plaintiff proceeds under §

---

[10]A claim for conspiracy under § 1983 is a vehicle to implicate those who did not actually participate in the violation of a person's constitutional rights. To successfully state a claim for civil conspiracy under § 1983, a plaintiff must prove: 1) the existence of a conspiracy that involves state action and 2) a deprivation of civil rights by a party to the conspiracy which is in furtherance of the conspiracy. Piskanin v. Hammer, 2005 WL 3071760, *4 (E.D.Pa. 2005). To successfully state a claim under 42 U.S.C. § 1985(3), "a plaintiff must allege: (1) a conspiracy; (2) motivated by a racial or class based discriminatory animus designed to deprive, directly or indirectly, any person or class of persons to the equal protection of the laws; (3) an act in furtherance of the conspiracy; and (4) an injury to person or property or the deprivation of any

1983 or § 1985(3), he or she must demonstrate the existence of a conspiracy. See <u>Lake</u>, 112 F.3d at 685. A conspiracy is a "combination of two or more persons acting in concert to commit an unlawful or criminal act or to do a lawful act by unlawful means or for an unlawful purpose." <u>Ammlung v. City of Chester</u>, 494 F.2d 811, 814 (3d Cir. 1974) (citation omitted). A plaintiff may present both direct and circumstantial evidence of an agreement to conspire, <u>Ball v. Paramount Pictures</u>, 169 F.2d 317, 319 (3d Cir. 1948), but a "plaintiff will not survive summary judgment if she bases her claims solely on suspicion and speculation." <u>Jackson-Gilmore v. Dixon</u>, 2005 WL 3110991, *12 (E.D.Pa. 2005) (citing <u>Anderson</u>, 744 U.S. at 256).

1.      **Alloy, HMS and the NJSEA**

Defendants Alloy, HMS, and the NJSEA move for summary judgment on the same basis: that Plaintiffs are unable to demonstrate the existence of a conspiracy between any, or all, of them. In response, Plaintiffs argue that "the Authority employees conspired with Mr. Alloy to falsely imprison Mr. Marulli and Mr. Mazza . . . [t]his was done by statements made by both parties." (Pl. Br. Opp'n to NJSEA). Plaintiffs allege that "[t]he NJSEA and Mr. Alloy conferred together concerning the detention of Mr. Marulli and Mr. Mazza and as a result of the conversations and the agreement between Mr. Alloy and the NJSEA Security, Mr. Marulli and Mr. Mazza were taken into custody and detained against their will." (Pl. Br. Opp'n to Alloy/HMS).

Plaintiffs' entire conspiracy claim is premised upon the fact that since they were detained, there must have been a conspiracy. Plaintiffs have not come forward with any evidence which

---

right or privilege of a citizen of the United States." <u>Lake v. Arnold</u>, 112 F.3d 682, 685 (3d Cir. 1997) (citing <u>Griffin v. Breckenridge</u>, 403 U.S. 88, 102 (1971)).

tends to demonstrate an existence of a genuine issue of material fact as to whether Alloy, the NJSEA and/or HMS ever agreed to anything, let alone agreed to detain the Plaintiffs. Rather, Plaintiffs rely upon conclusory statements and arguments which do not raise triable issues precluding summary judgment. <u>Ridgewood</u>, 172 F.3d at 252.

Plaintiffs' statements of material facts submitted in opposition to the motion of the NJSEA and the motion of Alloy and HMS make *not a single reference* to evidence of any agreement among these three Defendants. Rather, Plaintiffs rely upon statements such as the following, "in this case Jason Alloy and representatives of the NJSEA and agreement [sic] was made between the two to have Mr. Marulli and Mr. Mazza taken into custody." (Pl. Br. Opp'n to Alloy/HMS). This statement is not supported by a single citation to the record. In fact, <u>in toto</u>, the portions of Plaintiffs' briefs which pertain to the conspiracy charge do not contain *one* citation to the record. Viewing the facts in the light most favorable to the Plaintiffs, at best, Plaintiffs potentially allege that when Alloy sought the help of a NJSEA security guard, this action established a conspiracy between Alloy and the NJSEA. Without more, such an allegation is insufficient to prove the existence of a conspiracy and Plaintiffs' claims for conspiracy, whether pursuant to 42 U.S.C. § 1983 or 42 U.S.C. § 1985(3), necessarily fail. Accordingly, Defendants' motions for summary judgment are granted as to Count Three. Such count is dismissed with prejudice.[11]

### 2.    John Does

---

[11]The Court's analysis does not reach the issue of whether Alloy and HMS were acting under color of state law for the purposes of a § 1983 conspiracy claim nor whether either Plaintiff is a member of a protected class as required to set forth a § 1985(3) conspiracy claim. And, with respect to a conspiracy claim under § 1983, the Court's analysis assumes <u>arguendo</u> that Plaintiffs successfully state an underlying constitutional violation.

As this Court discussed <u>supra</u>, in Section A.3 of this discussion, Plaintiffs' failure to further identify any anonymous Defendants is fatal to such claims. Accordingly, Count Three is dismissed with prejudice as alleged against all as-yet unnamed Defendants.

**C.      False Imprisonment**

Count Seven of Marulli's Amended Complaint and Count Six of Mazza's Amended Complaint allege a claim for false imprisonment ("Count Six/Seven"). At first glance, it is unclear to the Court whether such a claim is raised pursuant to 42 U.S.C. § 1983 or under some comparable state statute. The NJSEA contends that the allegations set forth in the complaints amount to a state law claim for false imprisonment since such claim sounds in negligence. (NJSEA Br. Reply at 4). Plaintiffs, however, assert that such allegations amount to a claim for false imprisonment pursuant to 42 U.S.C. § 1983. (Pl. Br. Opp'n to NJSEA). The language of the claim is identical in both complaints. It states:

> Defendant New Jersey Sports and Expedition Authority [sic]
> through its own actions and the actions of its employees caused
> plaintiff to be falsely imprisoned. Defendants New Jersey Sports
> and Expedition Authority [sic] and its employees failed to take
> proper precautions and properly investigate any [and] all claims
> concerning allegations against the plaintiff. Further New Jersey
> Sports and Expedition Authority [sic] and through its employees
> *negligently caused* plaintiff to be imprisoned by its own staff
> wherein plaintiff was prevented from leaving the facilities and
> ultimately turned over [to] the New Jersey State Police.

(Mazza Am. Compl. ¶¶ 36-38; Marulli Am. Compl.¶¶ 41-43) (emphasis added). Although the claims incorporate the allegations of the preceding counts, there is no indication whether Plaintiffs intend to pursue a remedy for false imprisonment under federal or state law. Further, although Plaintiffs refer to employees of the NJSEA as liable for their alleged false

imprisonment, no specific employee is named, nor do Plaintiffs specifically reference any John Does. Rather, Plaintiffs make only a global reference to "employees."

First, to the extent that Plaintiffs' false imprisonment claim against "NJSEA employees" is a claim brought against unidentified Defendants who were employed by the NJSEA on March 20, 2004, Count Seven for false imprisonment is dismissed due to the failure to identify these Defendants, as discussed supra.  If, on the other hand, Plaintiffs intended to *characterize* Defendants properly-named in other parts of the complaints as "NJSEA employees," such an attempt clearly fails since the Final Pretrial Order's stipulation of facts states that Alloy was an employee of HMS on March 20, 2004, not an employee of the NJSEA, and no other NJSEA employees have been named in this action. The two remaining Defendants potentially liable on this claim are thus HMS and the NJSEA itself.[12]

### 1.    HMS

HMS moves for summary judgment on Count Six/Seven on the basis that any claim for false imprisonment is not directed to this defendant. (HMS Br. at 15). Plaintiffs' Statement of Material Facts in Opposition and accompanying brief do not address this argument nor offer any facts or evidence in contradiction. Accordingly, the Court will consider HMS's motion for summary judgment as to Count Six/Seven as unopposed.[13] Count Six/Seven are hereby dismissed

---

[12]In any case, even if the Court were to ignore Plaintiffs' failure to properly name Alloy as a Defendant in conjunction with this claim, the Court would nevertheless grant summary judgment to Alloy on this claim. Plaintiffs do not allege that Alloy was present during the time period they were allegedly imprisoned and do not otherwise state any basis for his liability.

[13]In circumstances where a nonmoving party fails to oppose the motion, Fed. R. Civ. P. 56(e) provides that the court may only grant the moving party's motion for summary judgment "if appropriate." See, e.g., Anchorage Assocs. v. V.I. Bd. of Tax Review, 922 F.2d 168, 175 (3d Cir. 1990); see also Damiano v. Sony Music Entm't, Inc., 975 F. Supp. 623, 627 (D.N.J. 1996)

with prejudice as alleged against HMS.

### 2.       The NJSEA

The NJSEA moves for summary judgment on Counts Six/Seven on the basis that the

NJSEA security officers had probable cause to detain the Plaintiffs, which constitutes a defense

to any federal or state false imprisonment claim. (NJSEA Br.[14]). The NJSEA also contends that

such claim must be dismissed since it sounds in state law, not federal, and the NJSEA is

immunized from liability by the NJTCA. (NJSEA Br. Reply at 4). In response, Plaintiffs contend

that Count Six/Seven sounds in federal law, specifically in § 1983, and that the NJSEA is liable

for violations of Plaintiffs' civil rights by NJSEA employees. Plaintiffs further argue that the

NJSEA was without legal authority to detain the Plaintiffs.

As noted supra, at the time of the filing of the complaints in this matter, both Plaintiffs

were represented by counsel, and continue to be so today. As such, Plaintiffs are not entitled to a

liberal construction of their complaints or Amended Complaints. See Haines v. Kerner, 404 U.S.

519, 520-21 (1972). After reviewing the language of Claim Six/Seven, and the remainder of the

pleadings, this Court determines that Plaintiffs' claim for false imprisonment actually sounds in

state law, rather than federal, and will discuss it accordingly.

_____

(granting summary judgment because the court considered the motion unopposed); U.S. v. Rohm
& Haas Co., 939 F. Supp. 1157, 1161 (D.N.J. 1996) (same). A moving party's motion is
appropriately granted when that party is entitled to judgment as a matter of law. Anchorage
Assocs., 922 F.2d at 175. Since Plaintiffs' claim for false imprisonment specifies that its basis is
the time period when Plaintiffs were allegedly detained by the NJSEA security before being
turned over to the New Jersey State Police, and no other evidence in the record indicates any
basis for liability for HMS, this Court determines that HMS is entitled to judgment as a matter of
law on this claim, whether sounding in federal, or state, law.

[14]The summary judgment brief of the NJSEA does not contain page numbers.

New Jersey courts treat the torts of false imprisonment and false arrest alike. <u>See</u> <u>Price v.</u> <u>Phillips</u>, 90 N.J.Super. 480, 484, 218 A.2d 167 (App.Div.1966). The tort consists of two elements: "(1) an arrest or detention of the person against his will; (2) done without proper legal authority or 'legal justification.'" <u>Fleming</u>, 255 N.J.Super. at 155, 604 A.2d 657. When a plaintiff pursues a claim for false imprisonment pursuant to § 1983, such claim is typically grounded in the protections provided by the Fourteenth Amendment. To succeed, a plaintiff must demonstrate that his liberty interests were violated without due process of law. <u>Baker v. McCollan</u>,  443 U.S. 137, 145 (1979). The Supreme Court cautions however, that § 1983 does not impose liability "for violations of duties of care arising out of tort law." <u>Id.</u> at 146. Significantly, the <u>Baker</u> Court cautioned that "false imprisonment does not become a violation of the Fourteenth Amendment merely because the defendant is a state official." <u>Id.</u>

Here, Plaintiffs' false imprisonment claims reads as one for based in state tort law. The claims make no mention of Plaintiffs' constitutional rights, nor of any deprivation of due process of law. As the <u>Baker</u> Court noted, just because a defendant is a state official does not mean that a claim for false imprisonment sounds in the Fourteenth Amendment, giving rise to a § 1983 claim. <u>Id.</u> at 146. Based upon the lack of specificity in the claim language, Plaintiffs' available remedy via New Jersey tort law, and the cautionary language of the <u>Baker</u> Court, this Court determines that Claim Six/Seven states a claim for false imprisonment solely under New Jersey state law.[15]

The Court must next determine whether it will retain jurisdiction over this claim, after

---

[15]This determination shall not be construed to mean that this Court believes that the NJSEA is liable for such a tort, nor that if the claim *had* been construed under § 1983, that the NJSEA would be liable for the alleged false imprisonment.

dismissing those claims over which the Court has original jurisdiction. Section 1367 (c)(2) of Title 28 provides, in pertinent part that "[t]he district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if ... the district court has dismissed  all claims over which it has original jurisdiction...."  Thus, this Court has discretion to decline jurisdiction over supplemental claims the after Court has dismissed all claims over which it had original jurisdiction. New Rock Asset Partners, L.P. v. Preferred Entity Advancements, Inc., 101 F.3d 1492, 1508 (3d Cir. 1993); Growth Horizons, Inc. v. Delaware County, Pa., 983 F.2d 1277, 1284 (3d Cir. 1993) ("In making its determination, the district court should take into account generally accepted principles of 'judicial economy, convenience, and fairness to the litigants'") (quoting United Mine Workers v. Gibbs, 383 U.S. 715, 726 (1966)); Freund v. Florio, 795 F. Supp. 702, 710 (D.N.J. 1992) ("[A]t this early stage in the litigation, dismissal of the pendent state claims in a federal forum will result in neither a waste of judicial resources nor prejudice to the parties).

This Court has previously dismissed all remaining claims accruing under federal law. Accordingly, the Court will now exercise its discretion pursuant to 28 U.S.C. § 1367(c)(2) and will decline to exercise supplemental jurisdiction over Plaintiffs' claims for false imprisonment. Count Six of the Mazza Amended Complaint and Count Seven of the Marulli Amended Complaint are hereby dismissed.[16]

**E.     Remaining State Law Claims**

For the reasons stated supra in Section C.2 of the Opinion, the Court will exercise its discretion pursuant to 28 U.S.C. § 1367(c)(2) and will decline to exercise supplemental

---

[16]The Court notes that this decision shall not operate as a determination on the merits of any of these claims.

jurisdiction over Plaintiffs' remaining state law claims for defamation, and Mazza's claim for respondeat superior. Such claims are hereby dismissed.[17]

**F.      Cross-Claims**

In its Answers to each complaint, the NJSEA asserted crossclaims against Alloy and HMS for contribution and indemnification. However, seeing as all claims in this matter have been dismissed, no basis for liability remains for any Defendant. Accordingly, the NJSEA's crossclaims are dismissed as moot.

<u>CONCLUSION</u>

For the reasons stated above, the NJSEA's motion for summary judgment is granted, Alloy and HMS's motion for summary judgment is granted, all remaining state law claims are dismissed for lack of jurisdiction, and the NJSEA's crossclaims are dismissed as moot.

An appropriate Order follows.


    /s/ Jose L. Linares
United States District Judge

DATED: September 22, 2006

_____

    [17]The Court notes that this decision shall not operate as a determination on the merits of any of these claims.